1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RODD COOLEY,

        Plaintiff,

      v.

HAROLD CLARKE, *et al.*,

        Defendants.

Case No. C05-5560 RBL/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:
October 13, 2006**

This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4. Plaintiff claims that he lacked legal access while incarcerated and that the law library at the Crowley County Corrections Center in Crowley County, Colorado was insufficient. Defendants Corrections Corporation of America (CCA) and Harold Clarke (Clarke) move for summary judgment (Dkt. # 24, 30). Plaintiff has not responded, although he requested and was granted an extension of time within which to file his response. (Dkt. # 40). Under Local Rule 7 (b)(2) failure to file papers in opposition to a motion may be deemed by the court as an admission the motion has merit. Having reviewed defendants' motions, the court recommends that they be granted and plaintiff's claims against these defendants be dismissed with prejudice. The remaining defendant, Warden Smelzer, has not joined in the motions for summary

REPORT AND RECOMMENDATION 1

judgment.

## I.  INTRODUCTION

Plaintiff, Rodd Cooley, is currently in the custody of the Washington State Department of Corrections (DOC) housed at Florence Correction Center (FCC) in Florence, Arizona.   (Dkt. # 30, Exh. 1).  Plaintiff was incarcerated at Crowley County Corrections Center (CCCC) in Crowley County, Colorado, at the time of the events alleged in his Complaint.  (Dkt. # 6).   Plaintiff's civil rights complaint under 42 U.S.C. § 1983 is against Defendants Clarke, Warden Smelzer and CCA. (Id.)  In his Complaint, Plaintiff claims that he lacked legal access while incarcerated at CCCC and that the law library at that facility was insufficient.  (Id.)  Plaintiff was transferred to FCC in Arizona on October 13, 2005.  On December 29, 2005, Defendant Clarke filed a motion to dismiss (Dkt. #15), which was granted with regard to Plaintiff's damages claims.  (Dkt. #22).  Defendant Clarke's motion was denied with regard to Plaintiff's requests for injunctive relief.  (Id).  While acknowledging that Plaintiff's transfer to Arizona deprived him of standing to seek injunctive relief with regard to conditions at CCCC, the undersigned also noted that Plaintiff might be able to request injunctive relief if the Complaint was amended to include the conditions at FCC.  (Dkt. # 19) However, Plaintiff never amended his Complaint.

## II.  FACTS

Plaintiff has not contradicted defendants' facts which are adopted as follows:

Defendant CCA/Contract with WDOC

CCA is a private company that provides jail, detention, and corrections services to governmental agencies.  (Dkt. # 27, ¶ 2).  On June 28, 2004, CCA and the State of  Washington's Department of Corrections ("WDOC") entered into a contract whereby CCA agreed to confine and manage Washington State inmates at its various

REPORT AND RECOMMENDATION 2

facilities.  (<u>Id</u>., ¶ 3)  Section 4.13 of the contract governs Washington inmates' access to the courts during incarceration.  (<u>Id</u>., Ex. A, p. 10).  That section provides, in pertinent part:

> <u>Access to Courts</u>. The <u>CCA will provide opportunity for meaningful access to federal and Washington State legal materials at the Facility in accordance with security and operating needs</u>. Every attempt should be made by CCA to provide WDOC Offenders in segregation and protective custody access to the law library collection established pursuant to this section providing their participation is consistent with the safety and security of the Facility. If direct access cannot be provided WDOC Offenders in segregation or protective custody, a process shall be established allowing WDOC Offenders in segregation or protective custody to request reasonable numbers of materials from a law library. <u>The WDOC shall provide Washington State legal materials required to meet constitutional standard via computer and associated peripherals.</u> The CCA shall provide federal law material; typewriters, including ribbons, and typing paper; notary services; copying services, including copy paper; legal size envelopes; sufficient to meet constitutional standards.

<u>Id</u>. (emphasis added). Accordingly, CCA provides access to legal materials to inmates in accordance with its security and operating needs, while the WDOC provides Washington State legal materials for the Washington inmates incarcerated at each CCA facility.  (<u>Id</u>., ¶ 4).

Under the contract, WDOC also designates a WDOC Contract Monitor to act as a liaison between CCA and Washington inmates and to monitor CCA's performance under the contract with WDOC.  (<u>Id</u>., ¶ 5, *see also*, Dkt. # 27, Exh. A, p. 4).

<u>Plaintiff Cooley/WDOC Inmate</u>

Pursuant to the contract between CCA and the WDOC, plaintiff, a Washington inmate, was incarcerated at CCCF, a medium-security CCA facility in Olney Springs, Colorado, from July 2, 2004 until October 13, 2005.  (<u>Id</u>., ¶¶ 2, 6; see also Id., Ex. B.  On July 20 and 21, 2004, plaintiff and approximately 200 other Washington inmates participated in a riot at CCCF. (Dkt. # 6, p. 3; Dkt. # 24, Exh. A, ¶ 7). As a result, CCCF implemented lock-down status at the facility and placed the participating inmates, including plaintiff, in administrative segregation. (Dkt. # 6, p. 3, Dkt. # 27, Exh. C).

CCCF defines "administrative segregation" as:

REPORT AND RECOMMENDATION 3

A non-punitive status involving separation of an inmate from the general population for the purpose of maintaining the safety, security, and order of the facility. An inmate is segregated administratively when he is unable to live in the general population and has been classified to a higher security level, administrative segregation in accordance with DOC Administrative Regulation 600-2 and is awaiting bed space at a more secure facility.

(Dkt. # 27, Exh. D, p. 1).

Inmates in administrative segregation retain access to legal materials:

Segregation inmates will have access to legal materials. Receiving and exchange of legal materials will be coordinated with the librarian at least once per week with the completion of the Law Library Request form.[1]

(Id., Exh. D, p. 7).

On July 23, 2004, CCCF's Warden, Brent Crouse, distributed a memorandum to all inmates regarding the schedule for all services, including library access, during the lockdown. (Id., Exh. E). WDOC Contract Monitors signed and acknowledged the emergency lockdown schedule. (Id.).

On July 26, 2004, Mr. Crouse distributed another memorandum to all CCCF inmates regarding access to legal materials. (Id., Exh. F). The memorandum directed inmates to request legal materials by completing an Inmate Request Form and submitting the form to Linda Lyons, the Library Supervisor. (Id.) The memorandum indicates that Ms. Lyons will pick-up the forms for legal materials twice per day, at 8:00 a.m. and 5:00 p.m. (Id.) WDOC Contract Monitors signed and acknowledged the legal access schedule on July 26, 2004. (Id.)

On July 28, 2004, Ms. Lyons distributed a supplemental memorandum to CCCF inmates, including a more specific schedule for accessing legal materials.

(Dkt. # 26, Exh. A).

On September 21, 2004, Mr. Crouse issued another memorandum to all CCCF inmates regarding further changes to the schedule for legal mail and request. (Dkt. # 27, Exh. G). According to the memorandum, Ms. Lyons and/or the mailroom staff would pick up and distribute legal mail and requests to staff Monday through

---

[1] A "Law Library Request Form" is synonymous with an "Offender Request Form" and an "Inmate Request Form." (Dkt. # 26, ¶ 4).

REPORT AND RECOMMENDATION 4

Friday, but not on weekends or holidays.  (Id.)

<u>Timeline of Relevant Events During Plaintiff's Incarceration at CCCF</u>

<u>August 26, 2004 Grievance</u>:   On August 26, 2004, Plaintiff filed an Offender Grievance Form, claiming CCCF denied him access to legal materials.  (Dkt. # 27, Exh. H).  Prior to August 26, 2004, however, Plaintiff had never submitted an Offender Request Form, requesting legal materials or an appointment with the librarian. (Dkt. # 26, ¶ 5). Nevertheless, on September 9, 2004, Jackie Lust, then Acting Grievance Offcer for CCCF, responded to Plaintiff's grievance with the following statement:

> While investigating your grievance I learned that the Computer for the Washington law library has been repaired by Washington DOC and it will be returned this week (8/31/04-9/3/04). I was also informed that Washington Case Managers are taking Washington offenders to the library two to three times a week. If you want to go to the library please contact the Washington Case Manager in your unit and let them know you wish to go. I would recommend sending them an <u>Offender Request Form</u>. As to your remaining concerns the Court Rules book and additional information is now available in the library for Washington offenders. Be aware that if you do not have access to a typewriter or computer through the library, you may also complete pleadings by handwriting them. Your grievance has been answered.

(Dkt. # 27, Exh. H) (emphasis in original).  Plaintiff acknowledged receipt of CCCF's response to his grievance on September 27, 2004.  (Id.)

<u>September 9, 2004 Grievance</u>:  On September 9, 2004, Plaintiff filed another grievance alleging CCCF denied him access to legal materials.  (Dkt. # 27, Exh. I). Again, however, Plaintiff had not submitted an Offender Request Form for legal materials or an appointment with the librarian prior to filing this grievance. (Dkt. # 26, ¶ 5). Nevertheless, on October 19, 2004, Dwayne Roberson, CCCF's Grievance Coordinator, responded to Plaintiff s grievance, attaching a statement from Jim Hale, CCCF's Program Manager.  (Id.)  Mr. Hale's statement outlines CCCF's policies and procedures regarding legal access that were previously distributed to the inmates:

> On 07/26/094 (sic), a memorandum was distributed to each inmate cell in the facility outlining the procedure to request access to the law library. The memorandum indicated that <u>a written request for legal copies and legal memorandum must be submitted to Ms. Lyons during the daily legal mail pickup</u>. The times for legal mail pickup were listed as 8:00 a.m. and 5:00 p.m. daily. The memorandum also addressed inmate request for notary access.

REPORT AND RECOMMENDATION 5

On 07/28/04, a second memorandum was placed in each inmate's cell listing the times for pickup of legal mail, legal access and legal copies twice daily on Saturday, Sunday, Monday, Wednesday, Thursday and Friday.

On 09/01/04, a third memorandum was sent to each inmate's cell. This memorandum outlined a plan to allow seven Colorado and seven Washington inmates who have legal deadlines to utilize the library between the hours of 6:00 p.m. and 8:00 p.m. on Monday, Wednesday and Thursday. According to the information provided in the memo inmates needed to send a written request for a library appointment to Ms. Lyons.

Inmate Cooley any reasonable request for legal copies and/or legal material would have been provided for you upon written notice to Ms. Lyons. Access to the library required a written request submitted to Ms. Lyons, along with proof of a court deadline. Court deadline timeframes determined which inmates were granted immediate access to the library.

(Id.) (emphasis added).

Plaintiff acknowledged receipt of CCCF's response on October 28, 2004. (Id.)  Notwithstanding Plaintiffs acknowledgement of both CCCF's responses detailing the proper procedures for requesting legal materials, Plaintiff did not submit any Offender Request Forms to the law library to request legal materials until April 13, 2005, more than seven months after his initial grievances regarding the alleged denial of legal access.  (Dkt. # 26, ¶ 5).

April 13, 2005 Request for Library Services: On or about April 13, 2005, Plaintiff submitted his first Offender Request Form to the law library for notary service.  (Id., Exh. B).  Linda Lyons, the librarian at CCCF, notarized and returned Plaintiffs documents on April 14, 2005. (Id.).

April 20, 2005 Request for Library Materials and Services:  On April 20, 2005, Plaintiff submitted an Offender Request Form to the law library for legal copies and forms for filing a § 1983 Civil Rights complaint.  (Dkt. # 26, Exh. C).  Ms. Lyons copied Plaintiffs documents and provided him the requested § 1983 forms.  (Id.).

April 26, 2005 Request for Legal Materials:  On April 26, 2005, Plaintiff submitted an Offender Request Form seeking "grievance policy form #05-165."  (Dkt. # 26, Exh. D).  Ms. Lyons instructed Plaintiff as follows:  "You have to get Washington grievance from Washington case manager or Washington monitor.  If you have any other questions please write to the law library again."  (Id.).  Plaintiff

REPORT AND RECOMMENDATION 6

did not submit a follow-up question or request to the library regarding grievance policy form #05-165.  (Id., ¶ 7).

May 11, 2005 Request for Legal Materials:  On May 11,2005, Plaintiff submitted an Offender Request Form seeking the following information:

> The cases (sic) law I need are the Wests (sic) Pacific Reporter 3d!  But the problem with that is I need 15-20 volumes to find one case 1st assault that pertains to my cause. Two volumes a week checkout will take months. I have been denied legal law library access since Oct. when they put me here! Religious section Volume #7 & #8 in left behind series place.

(Dkt. # 26, Exh. E).

On May 13, 2005, Ms. Lyons responded: "Please tell me which volumes and then we will work something out."  (Id.)   Plaintiff did not submit a follow-up Offender  Request Form specifying the Pacific Reporter volumes he needed.  (Id., ¶ 8).

June 2, 2005 Request for Legal Materials:  On June 2, 2005, Plaintiff submitted an Offender Request Form requesting the Jailhouse Lawyer Handbook. (Dkt. # 26, Exh. F).  Ms. Lyons provided the handbook to Plaintiff on June 8, 2006. (Id.).

 June 5, 2005 Grievance:  On June 5, 2005, Plaintiff filed a grievance alleging, among other things, that CCCF lost his notarized legal mail and "continually denied" him access to legal materials.  (Dkt. # 27, Ex. 1).  James Higby, the legal liaison for CCCF, investigated Plaintiff's grievance and found no evidence to support Plaintiff s allegations.  (Id.).  During his investigation, Mr. Higby spoke with Linda Lyons, the librarian at CCCF, who confirmed that Plaintiff submitted a request for notary service, which was granted and completed on April 14, 2005.  (Id.; *see also* Dkt. # 26, Exh. B).

July 29, 2005:  On or about July 29, 2005, Plaintiff requested a copy of the "Washington Contract."  (Dkt. # 26, Exh. G).  The library provided Plaintiff with the contract on July 29, 2005, advising him to return it by August 3, 2005.  (Id.).

August 4, 2005 Grievance:  On August 4, 2005, Plaintiff filed an Offender Grievance Form, again asserting that CCCF deprived him of access to Washington legal materials.  (Dkt. # 26, Exh. H).  On August 18, 2005, Ms. Lyons responded to Plaintiff s grievance, in pertinent part:

> Inmate Cooley, DOC# 922445, is a Washington inmate. I have explain (sic) to him that the only information the law library has is:

REPORT AND RECOMMENDATION 7

1. Washington Court Rules Local - 2004

2. Washington Court Rules State - 2004

3. Washington Court Rules Federal- 2004

On April 2005, when the Washington inmates were packed out the
Washington Monitors came to the law library and boxed up all paper
cases and CD Rom's to be taken to the two other states the inmates
were going. As of that time this facility has not seen a Washington
Monitor. I as librarian have informed the Washington inmates being
housed in Segregation that as inmates they need to write to
Washington State and ask for a monitor to come and visit here at this
facility. I also informed inmates from Washington that they are being
housed in a Colorado facility and have Colorado charges filed on them
and they can go by Colorado laws. At this time no inmate has done
any Colorado filing through the law library.

(Dkt. # 26, Exh. G).

As Ms. Lyons indicated to Plaintiff, the WDOC's Contract Monitors packed
and shipped hard copies and software containing Washington legal materials to other
CCA facilities in April of 2005.  (Id., ¶ 11).   In spite of this, however, CCCF's library
staff still granted each of Plaintiff's written Offender Request Forms requesting
Washington legal materials.  (Id., ¶ 12).  When Plaintiff requested specific
Washington case law after April 2005, Ms. Lyons was still able to provide those cases
to him.  (Id., Exhs. I and J).

Plaintiff's Complaint:  On August 22, 2005, Plaintiff filed a Complaint
pursuant to 42 U.S.C. § 1983 against CCA and the Director of the WDOC, Harold
Clark, claiming they had violated his constitutional rights by denying him access to the
courts during his incarceration at CCCF.  Plaintiff's denial of access claims appears to
have three factual components, all of which are quite general:

(1)     We were placed on lock down status and were denied
law library access.

(2)     On September 27, 2004, I received my court
transcripts. I immediately mailed to a friend who could help me out
since I had no access to law library.  The money was taken off my
account, but they did not mail out for 2 months. I only had 30 days to
submit my additional grounds of review to state appellate court. Time
expired.

REPORT AND RECOMMENDATION 8

      (3)     I was told by Warden Goodrich (Asst.) that law library was sent out to Arizona with inmates that left. This news directly affects my appeal.

(Dkt. # 6, p. 3).

## II.  DISCUSSION

**A.**    **Standard of Review**

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,

809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. Id.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809 F.2d at 630 (relying on Anderson, *supra*).  Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."   Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

**B.    Denial of Access to An Adequate Law Library**

To state a claim under 42 U.S.C. § 1983: (1) the defendant must be a person acting under color of state law; and (2) his conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986). Implicit in the second element is a third element of causation. *See* Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274, 286-87 (1977); Flores v. Pierce, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed.

In this case, Plaintiff alleges the CCA deprived him of his constitutional right of access to the courts.  (Dkt. # 6, p. 3).  Prisoners have a federal constitutional right of access to the courts guaranteed by the Fourteenth Amendment. *See* Bounds v. Smith, 430 US. 817,821,97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); *see also* Royse v. Superior Court, 779 F.2d 573 (9th Cir. 1986).  However, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of

REPORT AND RECOMMENDATION 10

fundamental constitutional rights to the courts.'" <u>Lewis v. Casey</u>, 518 US. 343, 351, 116 S. Ct.

2174, 135 L. Ed. 2d 606 (1996); <u>Bounds</u>, 410 US. at 825.

The Ninth Circuit has established a two-step analysis for determining whether a right of

access claim has merit.  First, the Court decides "whether the claimant alleges a denial of

adequate law libraries or adequate assistance from persons trained in the law." <u>Sands v. Lewis</u>,

886 F.2d 1166, 1171 (9th Cir. 1989).  If the claim does not involve denial of either, the court

must determine whether the plaintiff alleges an actual injury to court access.  <u>Id</u>.  "An 'actual

injury' is a specific instance where an inmate was actually denied access to the courts.  <u>Sands</u>, 886 at

1171.  In order to state a claim for relief, the plaintiff must establish either that (1) he was denied

access to an adequate law library or trained legal assistance or (2) he was actually denied access to

the courts.  <u>Id</u>.  A "temporary deprivation of an inmate's legal materials does not, in all cases, rise to

a constitutional deprivation." <u>Vigliotto v. Terry</u>, 873 F.2d 1201, 1202-03 (9th Cir. 1989).

### (1)   <u>Plaintiff Cannot Demonstrate He Was Denied Access to An Adequate Law Library</u>

Plaintiff does not allege that CCA denied him access to trained legal assistance so he

must demonstrate that CCA denied him access to an adequate law library.  CCA notes that before

and during segregation, Plaintiff was entitled to request legal access, subject to the procedures and

time-lines set forth in the memoranda distributed to all inmates following the riot on July 20, 2004.

(Dkt. # 27, Exhs. E-G).  Plaintiff did not request any legal materials or assistance from the library

until April 13, 2005.  (Dkt. # 26, Exh. A).  Between April 13, 2005 and October 5, 2005, Plaintiff

submitted eight Offender Request Forms to the library for legal materials or notary service.  (<u>Id</u>.,

Exhs. A-F, H, and I).  The library granted each of Plaintiff's requests in all but two cases, where he

was asked to provide more specific information or advised to direct his request to the appropriate person. (Id., Exhs. C, D). Accordingly, Plaintiff cannot demonstrate that the CCCF library was so inadequate that it could not fulfill his requests for legal materials.

Plaintiff also alleges: "I was told by Warden Goodrich (Asst.) that law library was sent out to Arizona with inmates that left. This news directly affects my appeal." (Dkt. # 6, p. 3). CCA does not dispute that the WDOC Case Monitors transferred Washington case law on CD ROM and in hard copy to other CCA facilities in April 2005. (Dkt. # 26, Exh. G). However, Plaintiff did not request any Washington case law at any time prior to October 2005. (Id., Exhs. A-F). And, after the Washington materials were shipped, the CCCF library staff still provided all requested Washington cases to Plaintiff upon his request. (Id., Exh. H and I).

Moreover, CCA argues, Plaintiff cannot demonstrate that CCA denied him access to an adequate law library as it is the WDOC and not CCA, who is contractually responsible for providing Washington state legal materials for Washington inmates. (Dkt. # 27, Exh. A).

### (2)   Plaintiff Cannot Demonstrate "Actual Injury"

If a plaintiff s claim does not involve denial of either adequate law libraries or adequate assistance from persons trained in the law, the court must determine whether the plaintiff alleges an actual injury to court access. Sands, 886 F.2d at 1171. An "actual injury" is a specific instance where an inmate was actually denied access to the courts. Id. However, "a temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional deprivation." Vigliotto, 873 F.2d at 1202-03 (9th Cir. 1989).

To demonstrate injury, Plaintiff states in his Complaint:

REPORT AND RECOMMENDATION 12

1
2
3
4

> On September 27, 2004, I received my court transcripts. I immediately mailed to a friend who could help me out since I had no access to law library. The money was taken off my account but they did not mail out for two months. I only had 30 days to submit my additional grounds of review to state appellate court.

5

(Dkt. # 6, p. 3). In addition, Plaintiff states: "I was told by Warden Goodrich that the law

6

library was sent out to Arizona with inmates that left. This news directly affects my appeal."

7

(Id.)

8

As the record reflects, plaintiff did not access the library or its services in 2004.  Plaintiff did

9

not submit an Offender Request Form to the library for materials or an appointment until April 13,

10

2005 - nearly seven months after the alleged injury.  (Dkt. # 26, ¶ 5).  In addition, mailings are

11
12

handled by the Washington Case Managers, not CCA.  (Dkt. # 27, ¶ 5)[2].

13

WDOC's transfer of legal materials to other facilities cannot provide the basis of actual injury

14

to Plaintiff because, as the record reflects, CCCF's library staff still provided all copies of specific

15

Washington state cases to Plaintiff upon his request.  (Dkt. # 26, Exhs. I and J).  In addition, Plaintiff

16

cannot demonstrate that he missed any filing deadlines from April 2005 until filing this lawsuit as

17
18

Plaintiff s appeal concluded a  month prior to the transfer of legal materials. (Dkt. # 25, Exh. A).

19

The Division II of the Court of Appeals for the State of Washington entered its Ruling Affirming

20

Judgment and Sentence on March 8, 2005. Id.

21

Accordingly, summary judgment is proper as Plaintiff has failed to demonstrate that the

22
23

_____

24

[2]The record reflects that Plaintiff filed a grievance on June 5, 2005, regarding this issue (which he claims occurred nine months prior on or about September 27, 2004).  In that grievance, Plaintiff claimed, as he does here, that the court transcripts for his appeal were held for two months. Plaintiffs appeal concluded on March 8, 2005.  (Dkt. #25, Exh. A). In its response to Plaintiff's grievance, CCA advised Plaintiff that "[a]s to your WA transcripts, your WA Representatives handled that and that did not go through our Legal Liaison, Mr. Higby."  (Dkt. # 27, Exh. 1).

25
26
27
28

REPORT AND RECOMMENDATION 13

CCCF library was so inadequate that it could not fulfill his request for legal materials and he has failed to specifically allege or demonstrate any actual injury in his access to courts claim.

**C.      Plaintiff's Claims Against Defendant Clarke Must Be Dismissed for Lack of Standing**

Generally, a prisoner's release or transfer from a prison will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action.  Preiser v. Newkirk, 422 U.S. 395, 402-03 (1975); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991); Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986). To secure injunctive relief, a plaintiff must demonstrate "a very significant possibility" that future harm will ensue. Nelsen v. King County, 895 F.2d 1248, 1250 (9th Cir. 1990). The burden of showing a likelihood of a recurrence of harm is "firmly on the plaintiff." Id. at 1251.

Plaintiff lacks standing to pursue injunctive relief as he is no longer incarcerated at CCCC and he has not asserted any likelihood that he will again suffer the harm that allegedly occurred to him while at CCCC.  In this court's Report and Recommendation dated February 8, 2006, it was noted that, in the absence of an amendment to the Complaint to include allegations regarding the conditions of confinement in Arizona, Plaintiff's transfer to Arizona deprived him of standing to challenge the conditions of confinement at CCCC. (Dkt. #21 at 2–3).  Plaintiff has not amended his Complaint. Accordingly, it is recommended that Plaintiff's claims against Defendant Clarke be dismissed for lack of standing.

**D.      Plaintiff Has No Constitutional Right to Placement in Particular Institution or State**

Inmates possess a fundamental constitutional right of access to courts in order to contest the fact, duration, and conditions of their confinement.  Bounds v. Smith, 430 U.S. 817, 822–23 (1977).

REPORT AND RECOMMENDATION 14

Inmates' access must be such that they are "able to present their grievances to the courts." <u>Lewis v. Casey</u>, 518 U.S. 343, 360 (1996). However, inmates have no constitutional right to be incarcerated in a particular prison. <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976). Inmates also have no constitutional right to be incarcerated in a particular state.  <u>Olim v. Wakinakona</u>, 461 U.S. 238, 245 (1983). Once an offender is confined in the custody of DOC by the superior court, the secretary of DOC is charged with determining the offender's placement in a correctional institution. RCW 72.02.230–.240.

Plaintiff requests injunctive relief, specifically a transfer back to Washington State, based on the assertion that he had to pay $25 for a phone call in Colorado and he needed to be back in Washington to work on his appeal.   Plaintiff is now housed in Arizona.   Washington DOC offenders housed outside of Washington have legal access and will be transferred back to Washington for all required court appearances.  (Dkt. # 30, Exh. 2).

Plaintiff has not alleged that the conditions of his confinement in Arizona violate any of his constitutional rights.  (Dkt. # 6).  Plaintiff has not requested transfer back to Washington as a remedy for the conditions of confinement in Arizona.  (<u>Id</u>.).  Plaintiff has no constitutional right to transfer back to the State of Washington. Defendant Clarke has the discretion, pursuant to legislative authority, to place Plaintiff in whatever correctional institution he deems appropriate.  Therefore, Plaintiff's claims against Defendant Clarke for injunctive relief, specifically for transfer back to the State of Washington, should be dismissed as a matter of law.

## III.  CONCLUSION

For the reasons stated above the court should **GRANT** defendants' motion for summary judgment and dismiss plaintiff's claims with prejudice against Defendants Corrections Corporation of

REPORT AND RECOMMENDATION 15

America and Harold Clarke.  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the

parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed.

R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

72(b), the clerk is directed to set the matter for consideration on **October 13, 2006**, as noted in the

caption.


          DATED this 15th day of September, 2006.




                                              Karen L. Strombom
                                              United States Magistrate Judge

REPORT AND RECOMMENDATION 16