UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RODD COOLEY,

        Plaintiff,

    v.

HAROLD CLARKE, *et al.*,

        Defendants.

Case No. C05-5560 RBL/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**January 26, 2007**

      This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4.  Plaintiff claims that he lacked legal access while incarcerated and that the law library at the Crowley County Corrections Center (CCCF) in Crowley County, Colorado was insufficient.  Before the Court is the notice of joinder of Defendant Warden Smelzer (Dkt. # 42), in which Defendant Smelzer, the current warden of CCCF, seeks to join in the motions for summary judgment of the remaining defendants (Dkt. # 24, 30).  Those motions resulted in a Report and Recommendation (Dkt. # 41), in which this Court recommended that the Plaintiff's claims against Defendants Corrections Corporation of America (CCA) and Harold Clarke be dismissed with prejudice. At the time the Court made its

REPORT AND RECOMMENDATION - 1

1  recommendation, Defendant Smelzer had not filed his notice of joinder. The Honorable Ronald B.

2  Leighton adopted the Report and Recommendation by Order dated October 16, 2006 (Dkt. # 47),

3  and Defendants CCA and Clarke have been dismissed from this action.  Defendant Smelzer's notice

4  of joinder was then re-noted until December 8, 2006 to provide the Plaintiff with an opportunity to

5  respond.   Plaintiff has not responded.  Under Local Rule 7 (b)(2) failure to file papers in opposition

6  to a motion may be deemed by the Court as an admission the motion has merit.  Having reviewed

7  Defendant Smelzer's motion for joinder, the Court recommends that he be granted summary

8  judgment for the same reasons that Defendants CCA and Clarke were granted summary judgment.

9  For the Court's convenience, the pertinent portions of the Report and Recommendation provided

10  with the earlier summary judgment motions are repeated here.

11

12                                         **I. <u>INTRODUCTION</u>**

13         Plaintiff, Rodd Cooley, is currently in the custody of the Washington State Department of

14  Corrections (DOC) housed at Florence Correction Center (FCC) in Florence, Arizona.   (Dkt. # 30,

15  Exh. 1).  Plaintiff was incarcerated at CCCF in Crowley County, Colorado, at the time of the events

16  alleged in his Complaint.  (Dkt. # 6).   Plaintiff's civil rights complaint under 42 U.S.C. § 1983 is

17  against Defendants Clarke, Warden Smelzer and CCA.  (<u>Id</u>.)  In his Complaint, Plaintiff claims that

18

19  he lacked legal access while incarcerated at CCCF and that the law library at that facility was

20  insufficient.  (<u>Id</u>.)  Plaintiff was transferred to FCC in Arizona on October 13, 2005.  On December

21  29, 2005, Defendant Clarke filed a motion to dismiss (Dkt. #15), which was granted with regard to

22  Plaintiff's damages claims.  (Dkt. #22).  Defendant Clarke's motion was denied with regard to

23  Plaintiff's requests for injunctive relief.  (<u>Id</u>).  While acknowledging that Plaintiff's transfer to

24  Arizona deprived him of standing to seek injunctive relief with regard to conditions at CCCF, the

25

26  undersigned also noted that Plaintiff might be able to request injunctive relief if the Complaint was

27

28  REPORT AND RECOMMENDATION - 2

amended to include the conditions at FCC.  (Dkt. # 19)  However, Plaintiff never amended his

Complaint.

## II.  FACTS

Plaintiff has not contradicted Defendants' facts which are adopted as follows:

Defendant CCA/Contract with WDOC

CCA is a private company that provides jail, detention, and corrections services to governmental agencies.  (Dkt. # 27, ¶ 2).  On June 28, 2004, CCA and the State of  Washington's Department of Corrections ("WDOC") entered into a contract whereby CCA agreed to confine and manage Washington State inmates at its various facilities.  (Id., ¶ 3)  Section 4.13 of the contract governs Washington inmates' access to the courts during incarceration.  (Id., Ex. A, p. 10).  That section provides, in pertinent part:

> Access to Courts. The CCA will provide opportunity for meaningful access to federal and Washington State legal materials at the Facility in accordance with security and operating needs. Every attempt should be made by CCA to provide WDOC Offenders in segregation and protective custody access to the law library collection established pursuant to this section providing their participation is consistent with the safety and security of the Facility. If direct access cannot be provided WDOC Offenders in segregation or protective custody, a process shall be established allowing WDOC Offenders in segregation or protective custody to request reasonable numbers of materials from a law library. The WDOC shall provide Washington State legal materials required to meet constitutional standard via computer and associated peripherals. The CCA shall provide federal law material; typewriters, including ribbons, and typing paper; notary services; copying services, including copy paper; legal size envelopes; sufficient to meet constitutional standards.

Id. (emphasis added). Accordingly, CCA provides access to legal materials to inmates in accordance with its security and operating needs, while the WDOC provides Washington State legal materials for the Washington inmates incarcerated at each CCA facility.  (Id., ¶ 4).

Under the contract, WDOC also designates a WDOC Contract Monitor to act as a liaison between CCA and Washington inmates and to monitor CCA's

REPORT AND RECOMMENDATION - 3

performance under the contract with WDOC.  (Id., ¶ 5, *see also*, Dkt. # 27, Exh. A, p. 4).

       Plaintiff Cooley/WDOC Inmate

       Pursuant to the contract between CCA and the WDOC, plaintiff, a Washington inmate, was incarcerated at CCCF, a medium-security CCA facility in Olney Springs, Colorado, from July 2, 2004 until October 13, 2005.  (Id., ¶¶ 2, 6; see also Id., Ex. B.  On July 20 and 21, 2004, plaintiff and approximately 200 other Washington inmates participated in a riot at CCCF.  (Dkt. # 6, p. 3; Dkt. # 24, Exh. A, ¶ 7).  As a result, CCCF implemented lock-down status at the facility and placed the participating inmates, including plaintiff, in administrative segregation.  (Dkt. # 6, p. 3, Dkt. # 27, Exh. C).

       CCCF defines "administrative segregation" as:

> A non-punitive status involving separation of an inmate from the general population for the purpose of maintaining the safety, security, and order of the facility. An inmate is segregated administratively when he is unable to live in the general population and has been classified to a higher security level, administrative segregation in accordance with DOC Administrative Regulation 600-2 and is awaiting bed space at a more secure facility.

(Dkt. # 27, Exh. D, p. 1).

       Inmates in administrative segregation retain access to legal materials:

> Segregation inmates will have access to legal materials. Receiving and exchange of legal materials will be coordinated with the librarian at least once per week with the completion of the Law Library Request form.[1]

(Id., Exh. D, p. 7).

       On July 23, 2004, CCCF's Warden, Brent Crouse, distributed a memorandum to all inmates regarding the schedule for all services, including library access, during the lockdown.  (Id., Exh. E).  WDOC Contract Monitors signed and acknowledged the emergency lockdown schedule.  (Id.).

---

[1]A "Law Library Request Form" is synonymous with an "Offender Request Form" and an "Inmate Request Form."  (Dkt. # 26, ¶ 4).

REPORT AND RECOMMENDATION - 4

On July 26, 2004, Mr. Crouse distributed another memorandum to all CCCF inmates regarding access to legal materials. (Id., Exh. F). The memorandum directed inmates to request legal materials by completing an Inmate Request Form and submitting the form to Linda Lyons, the Library Supervisor. (Id.) The memorandum indicates that Ms. Lyons will pick-up the forms for legal materials twice per day, at 8:00 a.m. and 5:00 p.m. (Id.) WDOC Contract Monitors signed and acknowledged the legal access schedule on July 26, 2004. (Id.)

On July 28, 2004, Ms. Lyons distributed a supplemental memorandum to CCCF inmates, including a more specific schedule for accessing legal materials.

(Dkt. # 26, Exh. A).

On September 21, 2004, Mr. Crouse issued another memorandum to all CCCF inmates regarding further changes to the schedule for legal mail and request. (Dkt. # 27, Exh. G). According to the memorandum, Ms. Lyons and/or the mailroom staff would pick up and distribute legal mail and requests to staff Monday through Friday, but not on weekends or holidays. (Id.)

<u>Timeline of Relevant Events During Plaintiff's Incarceration at CCCF</u>

<u>August 26, 2004 Grievance</u>:   On August 26, 2004, Plaintiff filed an Offender Grievance Form, claiming CCCF denied him access to legal materials. (Dkt. # 27, Exh. H). Prior to August 26, 2004, however, Plaintiff had never submitted an Offender Request Form, requesting legal materials or an appointment with the librarian. (Dkt. # 26, ¶ 5). Nevertheless, on September 9, 2004, Jackie Lust, then Acting Grievance Offcer for CCCF, responded to Plaintiff's grievance with the following statement:

> While investigating your grievance I learned that the Computer for the Washington law library has been repaired by Washington DOC and it will be returned this week (8/31/04-9/3/04). I was also informed that Washington Case Managers are taking Washington offenders to the library two to three times a week. If you want to go to the library please contact the Washington Case Manager in your unit and let them know you wish to go. I would recommend sending them an <u>Offender Request Form</u>. As to your remaining concerns the Court Rules book and additional information is now available in the library for Washington offenders. Be aware that if you do not have access to a typewriter or computer through the library, you may also complete pleadings by handwriting them. Your grievance has been answered.

(Dkt. # 27, Exh. H) (emphasis in original). Plaintiff acknowledged receipt of CCCF's response to his grievance on September 27, 2004. (Id.)

REPORT AND RECOMMENDATION - 5

September 9, 2004 Grievance:  On September 9, 2004, Plaintiff filed another grievance alleging CCCF denied him access to legal materials.  (Dkt. # 27, Exh. I).  Again, however, Plaintiff had not submitted an Offender Request Form for legal materials or an appointment with the librarian prior to filing this grievance.  (Dkt. # 26, ¶ 5).  Nevertheless, on October 19, 2004, Dwayne Roberson, CCCF's Grievance Coordinator, responded to Plaintiff s grievance, attaching a statement from Jim Hale, CCCF's Program Manager.  (Id.)  Mr. Hale's statement outlines CCCF's policies and procedures regarding legal access that were previously distributed to the inmates:

> On 07/26/094 (sic), a memorandum was distributed to each inmate cell in the facility outlining the procedure to request access to the law library. The memorandum indicated that <u>a written request for legal copies and legal memorandum must be submitted to Ms. Lyons during the daily legal mail pickup</u>. The times for legal mail pickup were listed as 8:00 a.m. and 5:00 p.m. daily. The memorandum also addressed inmate request for notary access.

> On 07/28/04, a second memorandum was placed in each inmate's cell listing the times for pickup of legal mail, legal access and legal copies twice daily on Saturday, Sunday, Monday, Wednesday, Thursday and Friday.

> On 09/01/04, a third memorandum was sent to each inmate's cell. This memorandum outlined <u>a plan to allow seven Colorado and seven Washington inmates who have legal deadlines to utilize the library between the hours of 6:00 p.m. and 8:00 p.m. on Monday, Wednesday and Thursday. According to the information provided in the memo inmates needed to send a written request for a library appointment to Ms. Lyons</u>.

> <u>Inmate Cooley any reasonable request for legal copies and/or legal material would have been provided for you upon written notice to Ms. Lyons</u>.  Access to the library required a written request submitted to Ms. Lyons, along with proof of a court deadline. Court deadline timeframes determined which inmates were granted immediate access to the library.

(Id.) (emphasis added).

Plaintiff acknowledged receipt of CCCF's response on October 28, 2004.  (Id.)  Notwithstanding Plaintiffs acknowledgement of both CCCF's responses detailing the proper procedures for requesting legal materials, Plaintiff did not submit any Offender Request Forms to the law library to request legal materials until April 13, 2005, more than seven months after his initial grievances regarding the alleged

REPORT AND RECOMMENDATION - 6

denial of legal access.  (Dkt. # 26, ¶ 5).

April 13, 2005 Request for Library Services: On or about April 13, 2005, Plaintiff submitted his first Offender Request Form to the law library for notary service.  (Id., Exh. B).  Linda Lyons, the librarian at CCCF, notarized and returned Plaintiffs documents on April 14, 2005. (Id.).

April 20, 2005 Request for Library Materials and Services:  On April 20, 2005, Plaintiff submitted an Offender Request Form to the law library for legal copies and forms for filing a § 1983 Civil Rights complaint.  (Dkt. # 26, Exh. C).  Ms. Lyons copied Plaintiffs documents and provided him the requested § 1983 forms.  (Id.).

April 26, 2005 Request for Legal Materials:  On April 26, 2005, Plaintiff submitted an Offender Request Form seeking "grievance policy form #05-165."  (Dkt. # 26, Exh. D).  Ms. Lyons instructed Plaintiff as follows:  "You have to get Washington grievance from Washington case manager or Washington monitor.  If you have any other questions please write to the law library again."  (Id.).  Plaintiff did not submit a follow-up question or request to the library regarding grievance policy form #05-165.  (Id., ¶ 7).

May 11, 2005 Request for Legal Materials:  On May 11,2005, Plaintiff submitted an Offender Request Form seeking the following information:

> The cases (sic) law I need are the Wests (sic) Pacific Reporter 3d!  But the problem with that is I need 15-20 volumes to find one case 1st assault that pertains to my cause. Two volumes a week checkout will take months. I have been denied legal law library access since Oct. when they put me here! Religious section Volume #7 & #8 in left behind series place.

(Dkt. # 26, Exh. E).

On May 13, 2005, Ms. Lyons responded: "Please tell me which volumes and then we will work something out."  (Id.)   Plaintiff did not submit a follow-up Offender  Request Form specifying the Pacific Reporter volumes he needed.  (Id., ¶ 8).

June 2, 2005 Request for Legal Materials:  On June 2, 2005, Plaintiff submitted an Offender Request Form requesting the Jailhouse Lawyer Handbook. (Dkt. # 26, Exh. F).  Ms. Lyons provided the handbook to Plaintiff on June 8, 2006. (Id.).

June 5, 2005 Grievance:  On June 5, 2005, Plaintiff filed a grievance alleging, among other things, that CCCF lost his notarized legal mail and "continually denied" him access to legal materials.  (Dkt. # 27, Ex. 1).  James Higby, the legal liaison for

REPORT AND RECOMMENDATION - 7

CCCF, investigated Plaintiff's grievance and found no evidence to support Plaintiff's allegations. (Id.). During his investigation, Mr. Higby spoke with Linda Lyons, the librarian at CCCF, who confirmed that Plaintiff submitted a request for notary service, which was granted and completed on April 14, 2005. (Id.; *see also* Dkt. # 26, Exh. B).

July 29, 2005: On or about July 29, 2005, Plaintiff requested a copy of the "Washington Contract." (Dkt. # 26, Exh. G). The library provided Plaintiff with the contract on July 29, 2005, advising him to return it by August 3, 2005. (Id.).

August 4, 2005 Grievance: On August 4, 2005, Plaintiff filed an Offender Grievance Form, again asserting that CCCF deprived him of access to Washington legal materials. (Dkt. # 26, Exh. H). On August 18, 2005, Ms. Lyons responded to Plaintiff's grievance, in pertinent part:

Inmate Cooley, DOC# 922445, is a Washington inmate. I have explain (sic) to him that the only information the law library has is:

1. Washington Court Rules Local - 2004

2. Washington Court Rules State - 2004

3. Washington Court Rules Federal- 2004

On April 2005, when the Washington inmates were packed out the Washington Monitors came to the law library and boxed up all paper cases and CD Rom's to be taken to the two other states the inmates were going. As of that time this facility has not seen a Washington Monitor. I as librarian have informed the Washington inmates being housed in Segregation that as inmates they need to write to Washington State and ask for a monitor to come and visit here at this facility. I also informed inmates from Washington that they are being housed in a Colorado facility and have Colorado charges filed on them and they can go by Colorado laws. At this time no inmate has done any Colorado filing through the law library.

(Dkt. # 26, Exh. G).

As Ms. Lyons indicated to Plaintiff, the WDOC's Contract Monitors packed and shipped hard copies and software containing Washington legal materials to other CCA facilities in April of 2005. (Id., ¶ 11). In spite of this, however, CCCF's library staff still granted each of Plaintiff's written Offender Request Forms requesting Washington legal materials. (Id., ¶ 12). When Plaintiff requested specific Washington case law after April 2005, Ms. Lyons was still able to provide those cases to him. (Id., Exhs. I and J).

REPORT AND RECOMMENDATION - 8

1

2          Plaintiff's Complaint:  On August 22, 2005, Plaintiff filed a Complaint
   pursuant to 42 U.S.C. § 1983 against CCA and the Director of the WDOC, Harold
3  Clark, claiming they had violated his constitutional rights by denying him access to the
   courts during his incarceration at CCCF.  Plaintiff's denial of access claims appears to
   have three factual components, all of which are quite general:
4

5          (1)      We were placed on lock down status and were denied
           law library access.
6

7          (2)      On September 27, 2004, I received my court
           transcripts. I immediately mailed to a friend who could help me out
8          since I had no access to law library.  The money was taken off my
           account, but they did not mail out for 2 months. I only had 30 days to
9          submit my additional grounds of review to state appellate court. Time
           expired.
10

11         (3)      I was told by Warden Goodrich (Asst.) that law library
           was sent out to Arizona with inmates that left. This news directly
12         affects my appeal.

13  (Dkt. # 6, p. 3).

14

15      Defendant Smelzer is employed by CCA and currently serves as the Warden for CCCF, a

16  position he has held since November 2004.  (Dkt. # 43).  As the warden of CCCF, Defendant

17
   Smelzer directs CCCF staff with respect to facility operations, including the law library.
18
   Consistent with CCCF policies and its contract with the Washington DOC, Defendant Smelzer
19
   directs the CCCF library staff to provide inmates with meaningful access to legal materials in
20
   accordance with CCCF's security and operating needs.  (Id.).  Defendant Smelzer attests that he
21

22  acted consistent with these policies and CCCF's contract with the Washington DOC with respect to

23  Plaintiff.  (Id.).
24

25

26

27                                **II.  DISCUSSION**

28  REPORT AND RECOMMENDATION - 9

**A.**     <u>**Standard of Review**</u>

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  <u>*See also*</u> Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 253 (1986); <u>T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association</u>, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases.  <u>Anderson</u>, 477 U.S. at 254; <u>T.W. Elec. Service Inc.</u>, 809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. <u>Id</u>.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim.  <u>T.W. Elec. Service Inc.</u>, 809

REPORT AND RECOMMENDATION - 10

F.2d at 630 (relying on <u>Anderson</u>, *supra*).  Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."   <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 888-89 (1990).

**B.      Denial of Access to An Adequate Law Library**

To state a claim under 42 U.S.C. § 1983: (1) the defendant must be a person acting under color of state law; and (2) his conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by* <u>Daniels v. Williams</u>, 474 U.S. 327 (1986). Implicit in the second element is a third element of causation. *See* <u>Mt. Healthy City School Dist. v. Doyle</u>, 429 U.S. 274, 286-87 (1977); <u>Flores v. Pierce</u>, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed.

In this case, Plaintiff alleges the CCA deprived him of his constitutional right of access to the courts.  (Dkt. # 6, p. 3).  Prisoners have a federal constitutional right of access to the courts guaranteed by the Fourteenth Amendment. *See* <u>Bounds v. Smith</u>, 430 US. 817,821,97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977); *see also* <u>Royse v. Superior Court</u>, 779 F.2d 573 (9th Cir. 1986).  However, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" <u>Lewis v. Casey</u>, 518 US. 343, 351, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); <u>Bounds</u>, 410 US. at 825.

The Ninth Circuit has established a two-step analysis for determining whether a right of access claim has merit.  First, the Court decides "whether the claimant alleges a denial of

REPORT AND RECOMMENDATION - 11

adequate law libraries or adequate assistance from persons trained in the law." <u>Sands v. Lewis</u>, 886 F.2d 1166, 1171 (9th Cir. 1989).  If the claim does not involve denial of either, the court must determine whether the plaintiff alleges an actual injury to court access.  <u>Id</u>.  "An 'actual injury' is a specific instance where an inmate was actually denied access to the courts.  <u>Sands</u>, 886 at 1171.  In order to state a claim for relief, the plaintiff must establish either that (1) he was denied access to an adequate law library or trained legal assistance or (2) he was actually denied access to the courts.  <u>Id</u>.  A "temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional deprivation." <u>Vigliotto v. Terry</u>, 873 F.2d 1201, 1202-03 (9th Cir. 1989).

### (1)   Plaintiff Cannot Demonstrate He Was Denied Access to An Adequate Law Library

Plaintiff does not allege that CCA denied him access to trained legal assistance so he must demonstrate that CCA denied him access to an adequate law library.  CCA notes that before and during segregation, Plaintiff was entitled to request legal access, subject to the procedures and time-lines set forth in the memoranda distributed to all inmates following the riot on July 20, 2004. (Dkt. # 27, Exhs. E-G).  Plaintiff did not request any legal materials or assistance from the library until April 13, 2005.  (Dkt. # 26, Exh. A).  Between April 13, 2005 and October 5, 2005, Plaintiff submitted eight Offender Request Forms to the library for legal materials or notary service.  (<u>Id</u>., Exhs. A-F, H, and I).  The library granted each of Plaintiff's requests in all but two cases, where he was asked to provide more specific information or advised to direct his request to the appropriate person.  (<u>Id</u>., Exhs. C, D).  Accordingly, Plaintiff cannot demonstrate that the CCCF library was so inadequate that it could not fulfill his requests for legal materials.

Plaintiff also alleges: "I was told by Warden Goodrich (Asst.) that law library was sent out to

REPORT AND RECOMMENDATION - 12

Arizona with inmates that left.  This news directly affects my appeal."  (Dkt. # 6, p. 3).  CCA does not dispute that the WDOC Case Monitors transferred Washington case law on CD ROM and in hard copy to other CCA facilities in April 2005.  (Dkt. # 26, Exh. G).  However, Plaintiff did not request any Washington case law at any time prior to October 2005.  (Id., Exhs. A-F).  And, after the Washington materials were shipped, the CCCF library staff still provided all requested Washington cases to Plaintiff upon his request.  (Id., Exh. H and I).

Moreover, CCA argues, Plaintiff cannot demonstrate that CCA denied him access to an adequate law library as it is the WDOC and not CCA, who is contractually responsible for providing Washington state legal materials for Washington inmates.  (Dkt. # 27, Exh. A).

### (2)    Plaintiff Cannot Demonstrate "Actual Injury"

If a plaintiff's claim does not involve denial of either adequate law libraries or adequate assistance from persons trained in the law, the court must determine whether the plaintiff alleges an actual injury to court access.  Sands, 886 F.2d at 1171.  An "actual injury" is a specific instance where an inmate was actually denied access to the courts.  Id.  However, "a temporary deprivation of an inmate's legal materials does not, in all cases, rise to a constitutional deprivation." Vigliotto, 873 F.2d at 1202-03 (9th Cir. 1989).

To demonstrate injury, Plaintiff states in his Complaint:

On September 27, 2004, I received my court transcripts. I immediately mailed to a friend who could help me out since I had no access to law library. The money was taken off my account but they did not mail out for two months. I only had 30 days to submit my additional grounds of review to state appellate court.

(Dkt. # 6, p. 3). In addition, Plaintiff states: "I was told by Warden Goodrich that the law library was sent out to Arizona with inmates that left. This news directly affects my appeal."

REPORT AND RECOMMENDATION - 13

1    (Id.)

2        As the record reflects, plaintiff did not access the library or its services in 2004.  Plaintiff did

3    not submit an Offender Request Form to the library for materials or an appointment until April 13,

4    2005 - nearly seven months after the alleged injury.  (Dkt. # 26, ¶ 5).  In addition, mailings are

5    handled by the Washington Case Managers, not CCA.  (Dkt. # 27, ¶ 5)[2].

6

7        WDOC's transfer of legal materials to other facilities cannot provide the basis of actual injury

8    to Plaintiff because, as the record reflects, CCCF's library staff still provided all copies of specific

9    Washington state cases to Plaintiff upon his request.  (Dkt. # 26, Exhs. I and J).  In addition, Plaintiff

10   cannot demonstrate that he missed any filing deadlines from April 2005 until filing this lawsuit as

11   Plaintiff s appeal concluded a  month prior to the transfer of legal materials. (Dkt. # 25, Exh. A).

12   The Division II of the Court of Appeals for the State of Washington entered its Ruling Affirming

13   Judgment and Sentence on March 8, 2005. Id.

14

15       Accordingly, summary judgment is proper as Plaintiff has failed to demonstrate that the

16   CCCF library was so inadequate that it could not fulfill his request for legal materials and he has

17   failed to specifically allege or demonstrate any actual injury in his access to courts claim.

18

19

20                                    **III.  CONCLUSION**

21       For the reasons stated above the court should also **GRANT** Defendant Smelzer's motion for

22

23   _____

24       [2]The record reflects that Plaintiff filed a grievance on June 5, 2005, regarding this issue
     (which he claims occurred nine months prior on or about September 27, 2004).  In that grievance,
25   Plaintiff claimed, as he does here, that the court transcripts for his appeal were held for two months.
     Plaintiffs appeal concluded on March 8, 2005.  (Dkt. #25, Exh. A). In its response to Plaintiff's
26   grievance, CCA advised Plaintiff that "[a]s to your WA transcripts, your WA Representatives
     handled that and that did not go through our Legal Liaison, Mr. Higby."  (Dkt. # 27, Exh. 1).

27

28   REPORT AND RECOMMENDATION - 14

1  summary judgment and dismiss Plaintiff's claims with prejudice against Defendant Smelzer.  A proposed

2  order accompanies this Report and Recommendation.   Pursuant to 28 U.S.C. § 636(b)(1) and Rule

3
   72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this
4
   Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a
5
6  waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).

7  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for

8  consideration on **January 26, 2007**, as noted in the caption.

9

10
           DATED this 3rd  day of January, 2007.
11

12

13

14

15                                            Karen L. Strombom
                                              United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

27

28  REPORT AND RECOMMENDATION - 15